IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL WATKINS,<br><br>    Petitioner,<br><br>  v.<br><br>TERRI GONZALEZ, Warden,<br><br>    Respondent.<br>_____ | No. C 09-3071 MMC (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS CLAIMS AS UNTIMELY; DIRECTING RESPONDENT TO FILE ANSWER ADDRESSING REMAINING CLAIMS**<br><br>**(Docket Nos. 11, 15)** |

On July 8, 2009, petitioner, a California prisoner incarcerated at Salinas Valley State Prison and proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Thereafter, petitioner filed a first amended petition ("FAP") containing two new claims. Now pending before the Court is respondent's motion to dismiss the two new claims as untimely. Petitioner has opposed the motion and respondent has filed a reply.[1]

**BACKGROUND**

In 2004, in the Superior Court of San Francisco County ("Superior Court"), petitioner pleaded guilty to one count of first-degree robbery and admitted an allegation as to one prior prison commitment, in exchange for dismissal of a charge of making terrorist threats as well

---

[1] Good cause appearing, respondent's motion for an extension of time to file the reply will be granted. The reply filed October 4, 2010, is hereby deemed timely.

as dismissal of several sentence-enhancement allegations of prior convictions and prison terms. Thereafter, petitioner moved to withdraw his guilty plea and, at the sentencing hearing, petitioner's counsel moved to withdraw as counsel and for appointment of new counsel. The trial court denied both motions and sentenced petitioner to eighteen years in state prison. Petitioner thereafter appealed the trial court's denial of the above-noted motions. The California Court of Appeal affirmed the judgment of the trial court and the California Supreme Court denied review.

Subsequently, petitioner challenged his conviction by filing habeas petitions in the Superior Court, the California Court of Appeal and the California Supreme Court. All three habeas petitions were denied.

On July 8, 2009, petitioner filed his initial petition in the instant action. The petition contained six claims. The Court, by order filed April 19, 2010, found five of said claims cognizable and directed respondent to respond to the petition, either by filing an answer or a motion to dismiss.[2]  (Docket No. 8 at 2:15-27.) Prior to either such response, however, petitioner, on June 14, 2010, filed the FAP. (Docket No. 10.) The FAP contains all six of the claims previously raised by petitioner in the original petition, as well as two new claims, designated "Ground 1" and "Ground 2" (hereafter, "Claims 1 and 2"). (Docket No. 10 at 7-10.)

## DISCUSSION

A. Petitioner's Claims

As noted, the FAP contains eight claims for federal habeas corpus relief. The six claims raised previously by petitioner in his original petition consist of four claims alleging ineffective assistance of appellate counsel (hereafter, "Claims 3, 4, 5 and 7"), one claim

---

[2] In addition to the five claims found cognizable, the petition included an additional claim, by which petitioner requested an evidentiary hearing. (Docket No. 1 at 41.) Because a request for an evidentiary hearing is not a claim asserting constitutional error, the Court did not construe such request as a separate claim for relief.

alleging ineffective assistance of trial counsel (hereafter, "Claim 8"),[3] and one claim requesting an evidentiary hearing on petitioner's other claims (hereafter, "Claim 6"). All such claims were first raised by petitioner by way of state habeas corpus, after petitioner's direct appeal had concluded.

The two new claims included by petitioner in the FAP are claims asserting trial court error based on the trial court's alleged erroneous denial of two post-plea motions, specifically, petitioner's motion to withdraw his guilty plea (Claim 1), and a motion, made at the sentencing hearing by petitioner's trial counsel, to be relieved as counsel for all further proceedings (Claim 2). (See Docket No. 10 at 7-10.) As noted above, both claims were raised and exhausted by petitioner in state court on direct appeal.

B.   Untimeliness

Respondent argues Claims 1 and 2 of the FAP must be dismissed as untimely.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996, and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Under AEDPA, petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[4] Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. Id. § 2244(d)(2).

In the motion to dismiss, respondent reviews in detail the procedural history of petitioner's state court and federal filings, and argues Claims 1 and 2 of the FAP are untimely because petitioner did not file the FAP within one year from the date on which the state court

---

[3]In its Order to Show Cause, the Court liberally construed the predecessor of this claim as one alleging ineffective assistance of appellate counsel. Upon further review of the claim as presented in the FAP, however, it appears petitioner's intent is to raise a claim alleging ineffective assistance of trial counsel.

[4]In rare instances, not presented by the instant petition, the limitations period may run from a date later than the date on which the judgment became final. See 28 U.S.C. § 2244(d)(1)(B)-(D).

3

judgment against petitioner became final, and petitioner is not entitled to sufficient statutory tolling to render the FAP timely. (See Mot. to Dismiss at 2:10-3:18, 5:5-16.)

In opposition to the motion to dismiss, petitioner accepts the procedural history as relayed by respondent, but argues he is entitled to additional statutory tolling.[5] The Court, however, need not decide whether petitioner is entitled to such additional tolling, as, even if petitioner is so entitled, the filing of the FAP is not timely. Specifically, petitioner acknowledges that approximately five months of the one-year limitations period ran between the date his state court judgment became final in March 2007, and the date he filed his first state habeas petition in August 2007. Consequently, even if, as petitioner argues, the statute of limitations was tolled until the California Supreme Court denied petitioner's final state habeas petition on June 10, 2009, petitioner had approximately seven months after such denial to timely file all of his claims in federal court. Petitioner did not file his FAP, by which he alleged the two new claims, until June 17, 2010, more than a year after the California Supreme Court's denial.

Under such circumstances, the new claims raised in the FAP must be dismissed as untimely, unless petitioner can show he is entitled to equitable tolling sufficient to render the claims timely, or, alternatively, that the claims relate back to the timely claims filed in the original petition.

C.      Equitable Tolling

AEDPA's one-year statute of limitations is subject to equitable tolling in appropriate circumstances. Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). "[A] petitioner is entitled

---

[5] Petitioner argues he is entitled to statutory tolling from June 12, 2008, the date on which he filed an untimely petition for review in the California Supreme Court, until June 10, 2009, the date on which the California Supreme Court denied petitioner's subsequently-filed habeas petition. Respondent argues petitioner is not entitled to statutory tolling for such period because the length of the delay between petitioner's filing of the petition for review and the subsequent habeas petition, a period of 134 days, was unreasonable. See Chaffer v. Prosper, 592 F.3d 1046, 1048 n.1 (9th Cir. 2010) (per curiam) (holding statutory tolling not available where unjustified delays of 115 and 101 days between filing of California habeas petitions not reasonable); see also Banjo v. Ayers, 614 F.3d 964, 970 (9th Cir. 2010) (holding statutory tolling not available where unjustified delay of 146 days between filing of California habeas petitions not reasonable).

4

to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation and citation omitted); accord Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."). The diligence required to establish entitlement to equitable tolling is "reasonable diligence." Holland, 130 S. Ct. at 2565.

Petitioner bears the burden of showing that "'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (internal citations omitted). Where a petitioner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied. Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005). Further, such petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence. Bryant v. Arizona Attorney General, 499 F.3d 1056, 1061 (9th Cir. 2007).

Here, although petitioner's two new claims of trial court error were exhausted on direct appeal a number of years before he filed the FAP, petitioner claims he is entitled to equitable tolling of the limitations period applicable to the filing of those claims in federal court because (1) he is a layperson acting pro se, and (2) while pursuing his state habeas corpus proceedings he was subjected to "intermittent lockdowns, a prison transfer, property withholdings and a lack of access to the law library." (Opp'n at 4.)

Petitioner's arguments are without merit. First, neither petitioner's lack of legal knowledge nor his pro se status constitute the sort of extraordinary circumstance warranting equitable tolling. See Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); see also Johnson v. United States, 544 U.S. 295, 311 (2005) (noting, in context of untimely petition brought by federal prisoner under 28 U.S.C. § 2255, Supreme Court has "never accepted pro se representation alone or procedural ignorance as an

5

1 excuse for prolonged inattention when a statute's clear policy calls for promptness").

2 Nor is equitable tolling justified by the conditions of confinement on which petitioner
3 relies. "Ordinary prison limitations" on a prisoner's access to the law library, including
4 limitations occasioned because of a prisoner's transfer to a higher level of security, do not
5 constitute extraordinary circumstances or make it impossible for him to file a timely petition.
6 Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009); see also Chaffer v. Prosper, 592 F.3d
7 1046, 1049 (9th Cir. 2010) (per curiam) (holding prisoner's pro se status, reliance on help of
8 inmates who were transferred or too busy to attend to his petitions, and law library's lack of
9 "handful" of volumes of case reporter not sufficient to constitute extraordinary circumstances
10 "given the vicissitudes of prison life"); Lindo v. Lefever, 193 F. Supp.2d 659, 663 (E.D.N.Y.
11 2002) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted
12 access to the law library and an inability to secure court documents do not qualify as
13 extraordinary circumstances.").

14 Further, petitioner has failed to show either that his pro se status or his conditions of
15 confinement made it impossible for him to file his claims of trial court error on time.
16 Whether a prisoner was able to file a prior state habeas petition is a factor in determining
17 whether he was unable to timely file a petition in federal court. See Gaston, 417 F.3d at
18 1034-35; see also Ramirez, 571 F.3d at 998 (concluding not impossible for prisoner to file
19 timely federal petition; noting prisoner's substantial legal filings in state court during relevant
20 time period). Here, the record shows that between the date petitioner's judgment of
21 conviction became final and the date he filed the FAP in the instant matter, petitioner filed
22 habeas petitions in the Superior Court, California Court of Appeal and California Supreme
23 Court, by which filings petitioner raised numerous claims, and, further, that petitioner, during
24 said time period, also filed the original petition in the instant action. Additionally, because
25 the two new claims raised in the FAP had been exhausted by appellate counsel on direct
26 appeal, all petitioner needed to do to bring those claims to federal court was to write them on
27 a habeas form and send them to the court clerk. Based on such facts, the Court finds it was
28 not impossible for petitioner to file his new claims on time.

6

In addition to the above considerations, the Court finds petitioner has not alleged facts showing he acted diligently, as he provides no explanation for why he could not have either (1) filed a timely federal petition containing the two previously exhausted claims of trial court error, and then moved for a stay of such petition while he returned to state court to exhaust his other claims, or (2) included said two claims of trial court error with the other claims in the original petition herein.

Based on the above, the Court concludes petitioner is not entitled to any period of equitable tolling. Accordingly, Claims 1 and 2 of the FAP will be dismissed as untimely, unless petitioner can show those claims relate back to the timely claims first filed in the original petition.

D.   Relation Back of New Claims in FAP

   1.   Legal Standard

Amendments made to a habeas petition after AEDPA's one-year limitations period has run relate back to the date of the original petition when the claim asserted in the amended petition "'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading'." Mayle v. Felix, 545 U.S. 644, 656 (2005) (citing Fed. R. Civ. P. 15(c)(2)). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." See id. at 650 (finding coerced confession claim did not relate back to original petition that raised factually distinct Confrontation Clause claim). In Mayle, the Supreme Court explicitly rejected the proposition that the "same 'conduct, transaction, or occurrence' [means the] same 'trial, conviction, or sentence.'" Id. at 664. Instead, relation back will only be applied when the original and amended petition plead claims that are "tied to a common core of operative facts." Id.

In the instant motion, respondent argues petitioner's new and original claims are not tied to a common core of operative facts such that the new, untimely claims relate back to the original petition. In opposition, petitioner makes the following argument:

7

> . . . Respondent acknowledges that the two claims go to matters of denial of motion[s] by the trial court during the guilt phase of the case. Habeas Corpus is an extension of the original case and the two claims in question are derive[d] from the set of operative facts that give rise to the other claims. They are not so different that they present questions of fact and law so distinct from the other claims as to be non-tolling.

(Opp'n at 5.)

The Court now reviews the substance of petitioner's new and original claims to determine whether relation back is warranted.

2.  Petitioner's New Claims

Petitioner's new claims concern two alleged instances of trial court error.

In Claim 1, petitioner asserts the trial court erred by denying petitioner's motion to withdraw his plea, which motion was made on the ground that the plea was involuntary due to the alleged failure of petitioner's former trial counsel, deputy public defender Daro Innouye ("Innouye"), to investigate two corroborating witnesses before advising petitioner to plead guilty. (Docket No. 10 at 7-9.)

In Claim 2, petitioner asserts the trial court erred when, without conducting a further inquiry, it denied an oral motion to withdraw as counsel, made at sentencing by Donald Bergerson ("Bergerson"), the attorney appointed after Innouye to represent petitioner and who, according to petitioner, made such motion on grounds of his own ineffective assistance and a conflict with petitioner. (Docket No. 10 at 10.) Petitioner does not explain the reasons why Bergerson provided ineffective assistance or the basis for the conflict. In briefing this same claim of trial court error on appeal, however, petitioner's appellate counsel argued that Bergerson was ineffective because he failed to realize from reading Innouye's notes in petitioner's file that the above-referenced corroborating witnesses existed and needed to be investigated, and that it was only when petitioner, after entering his plea, told Bergerson about the witnesses that Bergerson conducted an investigation and filed the above motion to withdraw the plea. (See Docket No. 2 Ex. P ["Appellant's Opening Brief"] at 5-8, 17.) Appellate counsel did not explain the grounds for the alleged conflict between Bergerson and petitioner, but argued that the trial court should have inquired further into Bergerson's

statement to the court that Bergerson and petitioner no longer saw "eye to eye on many things since the filing of the motion [to withdraw the guilty plea]." (Id. at 8.)

### 3. Petitioner's Original Claims

The claims first raised by petitioner in the original petition are Claims 3 through 8 of the FAP.

#### a. Ineffective Assistance of Appellate Counsel

Four of the claims from the original petition allege ineffective assistance of appellate counsel, based on such counsel's failure to raise the following claims on direct appeal: (1) the sentencing court violated petitioner's right to due process when it sentenced him to an upper term on the robbery charge without a prior determination having been made either by the judge or a jury that petitioner's prior convictions qualified as serious felonies (Claim 3); (2) the sentencing court violated due process because it did not exercise its authority to strike petitioner's prior convictions in the furtherance of justice (Claim 4); (3) petitioner did not enter his plea knowingly and voluntarily because the prosecution relied on false evidence concerning petitioner's prior convictions to obtain the plea (Claim 5); (4) the prosecutor engaged in misconduct by failing to turn over evidence concerning petitioner's prior convictions (Claim 7).

Having compared the substance of petitioner's new claims with that of petitioner's original claims, the Court finds the new and original claims do not share a common core of operative facts. In particular, there is no relationship, whether in "time [or] type," see Mayle, 545 U.S. at 650, between the facts underlying petitioner's original claims, alleging ineffective assistance of appellate counsel based on sentencing error and prosecutorial misconduct, and the facts underlying petitioner's new claims, alleging trial court error based on denial of petitioner's motion to withdraw his guilty plea as uninformed and Bergerson's motion to withdraw on grounds of failure to investigate and conflict.

Further, this is not a case where petitioner's new claims do no more than allege additional facts that would support his original claims. Cf. Valdovinos v. McGrath, 598 F.3d 568, 575 (9th Cir. 2010), judgment vacated on other grounds, Horel v. Valdovinos, 2011 WL

9

1 197628 (U.S. Jan. 24, 2011) (holding claim of ineffective assistance alleged in amended
2 petition related back to claim of ineffective assistance alleged in original petition where both
3 claims pertained to counsel's alleged failure to adequately investigate suppressed exculpatory
4 evidence, and amended claim "simply add[ed] more evidence that counsel did not uncover").
5 Both claims of trial court error were raised by appellate counsel on direct appeal, and
6 petitioner makes no allegation of ineffective assistance of appellate counsel with respect
7 thereto.

      b.  <u>Ineffective Assistance of Trial Counsel</u>

   One claim from the original petition alleges ineffective assistance of trial counsel, based on a failure by Bergerson to move to disqualify the trial judge (Claim 8). Specifically, petitioner claims the judge denied petitioner's motion to withdraw his plea and Bergerson's motion to withdraw as counsel because of the judge's personal bias against petitioner, which bias allegedly was known to Bergerson based on derogatory statements made by the judge about petitioner to, and in the presence of, Bergerson. As noted above, petitioner's new claims of trial court error concern the trial court's denial of the same post-plea motions. The new claims do not relate back to the original claim, however, because the claims do not share a common core of operative facts.

   The core facts underlying the above-described original claim of ineffective assistance are the failure by Bergerson to seek disqualification of the trial judge on grounds of bias. By contrast, the core facts underlying petitioner's new claims are (1) the failure by the trial judge to allow petitioner to withdraw his guilty plea on grounds it was not knowingly made in light of Innouye's failure to investigate witnesses and (2) the failure by the trial judge to permit Bergerson to withdraw in light of his own failure to investigate witnesses and possible deterioration in his relationship with petitioner.

   In sum, although petitioner's new claims and original claims both include reference to the same two post-plea motions, the new and original claims involve different alleged errors by different actors at different times, and, consequently, do not share a common core of operative facts. See <u>Rhoades v. Henry (Haddon)</u>, 598 F.3d 511, 519-20 (9th Cir. 2010)

10

(holding district court properly denied leave to amend petition to add claims arising out of alleged prosecutorial misconduct because claims did not relate back to original claims involving police questioning at time of arrest, jailhouse informant testimony, and judicial bias); Hebner v. McGrath, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (holding district court properly denied leave to amend petition where later claim "directed at the jury instructions given by the trial court" was "not sufficiently related" to original claim involving "evidence admitted at trial").

          c.      Request for Evidentiary Hearing

In Claim 6 of the FAP petitioner requests an evidentiary hearing on all of his other claims. As such request does not state a cognizable ground for habeas corpus relief, the claim will be dismissed, without prejudice to petitioner's filing a motion for an evidentiary hearing.

    4.      Conclusion

Based on the above, the Court concludes Claims 1 and 2 of the FAP do not relate back to any claim in the original petition. Accordingly, the Court will grant respondent's motion to dismiss Claims 1 and 2 as untimely, and will direct respondent to answer Claims 3, 4, 5, 7 and 8 of the FAP.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Respondent's request for an extension of time to file a reply is hereby GRANTED. (Docket No. 15.)

2. Respondent's motion to dismiss Claims 1 and 2 of the FAP as untimely is hereby GRANTED. (Docket No. 11.)

3. Respondent shall file with the Court and serve on petitioner, within **sixty (60)** days of the date this order is filed, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be granted based on Claims 3, 4, 5, 7 and 8 of the FAP. Respondent shall file with the answer and serve on petitioner a copy of all portions of the state trial record that have been

11

transcribed previously and that are relevant to a determination of the issues presented by such claims.

If petitioner wishes to respond to the answer, he shall do so by filing a traverse with the Court and serving it on respondent's counsel within **thirty (30)** days of the date the answer is filed.

4. Petitioner is reminded that all communications with the Court must be served on respondent by mailing a true copy of the document to respondent's counsel.

5. It is petitioner's responsibility to prosecute this case. Petitioner must keep the Court and respondent informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

6. Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

This order terminates Docket Nos. 11 and 15.

IT IS SO ORDERED.

DATED: March 4, 2011

_____
MAXINE M. CHESNEY
United States District Judge

12